## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAWN MARIE BALL,** | : | **CIVIL NO. 1:11-CV-2240** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **S. KERNS BARR, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.      Statement of Facts and of the Case

### A.      Introduction

The plaintiff, Dawn Ball, is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses, and candidly acknowledges that she is profoundly disturbed, informing the court that:

> My mental health is declining. I suffer from OCD so bad I scrub my hands till they bleed, confusion, PTSD, disassociative disorder, I smell, see and hear things not there, severely stressed, phobias, agoraphobia, severe anxiety, lack of interest in things, lack of arousal in thing, racing thoughts, suicidal, cognitive problems and disorders, lack of interest in life, disoriented, dizzyness, paranoid–schizophrenic, constant worry, frightened scared, can't properly care for myself, tics, bipolar, manic

1

depressive, mood swings that are so severe, can't think clearly....

Ball v. Beard, No. 1:09-CV-845, (Doc. 42,  pp. 6-7).

While she suffers from paranoia, schizophrenia, and experiences these visual and auditory hallucinations, Ball is also a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison. Indeed, at present Ball has a total of nineteen lawsuits pending before this court.[1]

Ball is also a prodigiously unsuccessful litigant, who has had at least three prior lawsuits dismissed either for failure to exhaust her administrative remedies, or as frivolous on the grounds that the lawsuit failed to state a claim upon which relief could be granted. The history of repeated, frivolous and meritless litigation in federal court by this plaintiff began in March of 2008, when Ball filed a complaint in the case

---

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.);Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.).

of <u>Ball v. SCI Muncy,</u> No. 1:08-CV-391 (M.D. Pa.). On December 10, 2008, the district court dismissed this civil action for failure to exhaust her administrative remedies,   <u>Ball v. SCI Muncy,</u> No. 1:08-CV-391 (M.D. Pa.) (Doc. 36), and on July 22, 2010, the United States Court of Appeals for the Third Circuit affirmed the dismissal of this action. <u>Ball v. SCI Muncy,</u> No. 1:08-CV-391 (M.D. Pa.) (Doc. 44).

On May 5, 2009, Ball filed a second civil action in the case of <u>Ball v. Hartman,</u> No. 1:09-CV-844 (M.D. Pa.). This action was dismissed by the district court, which found Ball's complaint to be frivolous, <u>Ball v. Hartman,</u> No. 1:09-CV-844 (M.D. Pa.) (Docs 32, 33, and 36,) and Ball's appeal of this dismissal order was summarily denied by the court of appeals pursuant to 28 U.S.C. § 1915(e)(2)(B).[2]   <u>Ball v. Hartman,</u> No. 1:09-CV-844 (M.D. Pa.) (Doc. 48).

While this action was pending, Ball filed yet another lawsuit in the case of <u>Ball v. Butts,</u> No. 1:11-CV-1068, (M.D.Pa.) on June 3, 2011. <u>Ball v. Butts,</u> No. 1:11-CV-1068 (M.D.Pa.)(Doc. 1). On June 15, 2011, upon a screening review of this complaint, the district court dismissed this action for failure to state a claim upon

---

[2]28 U.S.C. § 1915(e)(2)(B)(i) provides that; "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal, . . . is frivolous or malicious." Thus the appellate court's October 29, 2010 ruling was tantamount to a declaration that this action was also frivolous.

which relief could be granted Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 8).

Ball appealed this dismissal. Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 10).

On September 21, 2011, the court of appeals entered an opinion and order dismissing

Ball's appeal as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B). That appellate court

opinion and order spoke unambiguously regarding the frivolous nature of this

particular lawsuit filed by Ball, stating in clear and precise terms that:

> Because we too have granted Ball leave to proceed IFP, we must screen
> this appeal to determine whether it is frivolous. See 28 U.S.C. §
> 1915(e)(2)(B)(I). An appeal is frivolous if it "lacks an arguable basis
> either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325
> (1989).This appeal lacks any such basis. As the District Court
> adequately explained, immunity extends even to judicial acts that are
> "done maliciously," and Ball has alleged nothing suggesting that Judge
> Butts acted in the "clear absence of all jurisdiction." Gallas v. Supreme
> Court of Pa., 211 F.3d 760, 769 (3d Cir.2000) (citation and internal
> quotation marks omitted). To the extent that Ball's request for injunctive
> relief might not have been subject to dismissal under §
> 1915(e)(2)(B)(iii), it was subject to dismissal under § 1915(e)(2)(B)(ii)
> because such relief is not available against "a judicial officer for an act
> ... taken in such officer's judicial capacity" under these circumstances.
> 42 U.S.C. § 1983. Finally, we are satisfied that any amendment of Ball's
> complaint would be futile. See Grayson v. Mayview State Hosp., 293
> F.3d 103, 111 (3d Cir.2002). Thus, we will dismiss this appeal.

Ball v. Butts, No. 11-2862, 2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

## B.    Ball's Current Lawsuit

It is against this backdrop that Ball pursues the instant case. Ball's current

complaint reflects a recurring theme which runs through the plaintiff's litigation:

4

Large controversies inspired by small events. Indeed, according to Ball's complaint, and attachments, this case began as a discussion over a piece of cornbread.

Ball's *pro se* complaint and attachments, (Doc. 1), reveal that this federal civil rights complaint arises out of two disciplinary proceedings conducted at SCI Muncy involving Ball. The first of these disciplinary proceedings involved an incident that began when prison officials served Ball a meal, which included a piece of cornbread that Ball found aesthetically displeasing. Specifically, Ball is alleged to have complained that the top of the cornbread was "not right". (Id.)

This simple culinary complaint then quickly escalated. (Id.) Prison officials asked Ball to return the tray if the cornbread was displeasing. She refused,  and the inmate and staff began tugging and pulling at the tray. (Id.) Ultimately, staff surrendered the tray to Ball after Ball allegedly claimed that she should throw the food tray at correctional officers. (Id.) When one correctional officer then ordered Ball to return the tray, it is alleged that she refused stating "Don't touch that tray you skinny limped dick  mother fucker." (Id.)  As a result of this incident, Ball was cited for refusing to obey staff orders and threatening staff. (Id.)

The second disciplinary proceeding related to alleged misconduct by Ball involving misuse of her prison-issued garb. (Id.) Specifically it was alleged that Ball plugged the toilet in her cell by jamming her prison gown into the plumbing, and that

5

Ball lied to staff about this episode, claiming that her gown had in fact been removed

from the cell by staff and not flushed down the toilet by Ball herself.(Id.) On the basis

of this alleged misuse of her prison garments, Ball was cited for damaging prison

property and making false statements to staff. (Id.)

Ball's *pro se* complaint and attachments further allege that a disciplinary

hearing was scheduled on these two infractions on October 3, 2011.(Id.) Given the

allegations that Ball had recently destroyed prison garb, the plaintiff was under a

jumpsuit restriction at the time of this hearing, which limited her prison

wardrobe.(Id.) On the date of the hearing Ball became embroiled in a new dispute

with staff, a dispute over her attire for the hearing that would examine allegations that

she had misused prison garb to damage her cell toilet. (Id.) Because  Ball was on a

jumpsuit restriction, prison officials allegedly offered to take her to the hearing

clothed in either a smock or a sheet. (Id.)[3]

Dissatisfied with these wardrobe choices, Ball alleges that she demanded that

she either: (1) be provided a jumpsuit; (2) have her hearing continued; or (3) require

the hearing examiner to come to Ball's cell to conduct the hearing. (Id.) Prison staff

treated Ball's wardrobe demands as tantamount to a refusal to attend the hearing, and

---

[3]Prison officials indicate that they offered Ball a smock; she insists they
offered her a sheet. This factual dispute is not material to our analysis of Ball's
claims. Suffice it to say, ball was given clothing options for attending this hearing.

the hearing was conducted *in absentia*. At the close of the hearing, citing numerous eyewitness accounts, the hearing examiner found that Ball had committed these disciplinary infractions and sanctioned her with periods of disciplinary custody. (Id.) Ball administratively appealed these findings, but her appeals were denied because she had failed to attend the October 3 disciplinary hearing. (Id.)

Ball then filed this complaint alleging that prison officials denied her due process in these disciplinary proceedings by failing to accommodate her wardrobe demands, or conducting the hearing at her cell, as she demanded. (Id.) Thus, at bottom, Ball insists that the refusal of prison officials to provide her the wardrobe options of her choosing, at a time when she was on jumpsuit restriction due to her prior destruction of prison-issued clothes, so she could attend a hearing about her misuse of prior prison-issued clothing to flood her cell amounts to a violation of the United States Constitution, which entitles her to both $15,000 in compensatory damages and punitive damages of $15,000 from each defendant.

Along with this complaint, Ball has filed a motion for leave to proceed *in forma pauperis*. (Doc. 2.) For the reasons set forth below, this motion will be GRANTED, but as part of the court's legally-mandated screening process it is recommended that this complaint, in its current form, be dismissed for failure to state a claim upon which relief can be granted.

## II.    Discussion

### A.    Screening of *Pro Se* Prisoner Complaints–Standard of Review

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints which seek redress against government officials.   Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a  prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be  granted; or

> (2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted."   This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).

8

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."  <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic</u>

Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal,</u> when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

<u>Fowler</u>, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. Applying these standards, we find that this complaint, in its present form, is subject to summary dismissal.

### B.   Ball's Current Complaint Fails to Meet the Pleading Standards Prescribed by Law

Judged against these standards, Ball's current *pro se* complaint is clearly fails to state a claim upon which relief can be granted.  Indeed, in its present form, Ball's complaint rests on flawed legal premises, which are entirely divorced from the factual context set forth in her pleadings.

That factual context reveals that Ball was an inmate housed in a disciplinary unit of a state prison, where she was on a clothing restriction due to her alleged destruction of prison-issued clothes. Ball had been cited for prison infractions arising out of a profane refusal to comply with staff instructions following an argument about the quality of a piece of cornbread, and a separate episode in which Ball was alleged to have misused prison garb to plug her cell toilet. Despite the fact that Ball had been cited for misuse of prison-issued clothing, at the time of her disciplinary hearing, she

declined the clothing options offered to her, and insisted that prison officials either comply with her wardrobe demands, or come to her cell to conduct this disciplinary hearing. Ball now asserts that the refusal of prison officials to comply with her demands violated due process. Thus, Ball invites us in this complaint to find a constitutional dimension to her wardrobe demands, and allow her to pursue damages claims against prison officials who declined to accede to her demands.

This court should decline Ball's invitation to hold prison officials personally liable for due process violations based upon their decision to decline to accede to Ball's demands that she be provided particular clothing to attend a prison disciplinary hearing relating to her misuse of clothing previously provided to her. Ball's complaint fails to state a claim of a constitutional dimension upon which relief can be granted for at least three reasons.

First, the complaint rests on the erroneous premise that Ball could dictate to prison officials what her prison wardrobe should be.  This premise is simply incorrect. While "prison officials must ensure that inmates receive adequate . . . clothing," Farmer v. Brennan, 511 U.S. 825, 832-833 (1994), correctional staff retain broad discretion in determining what garb is appropriate for inmates. Thus, the courts are particularly reluctant to intervene in inmate wardrobe disputes and have rarely found that such disputes rise to the level of a constitutional infraction. For example, courts

13

have declined to find that inmates have a constitutional right to particular outdoor attire or exercise garb. See  Smith v. United States, 432 F.App'x 113 (3d Cir. 2011). This principle applies to clothing restrictions in disciplinary housing units in Pennsylvania state prisons, where inmates are often required to wear smocks, and where "the federal . . .  courts unanimously have found that the . . . conditions of confinement in the various restrictive housing units in the Pennsylvania state institutions, . . ., without more, do[] not violate the [constitution]. See, e.g., Griffin v. Vaughn, 112 F.3d 703 (3d Cir.1997) (holding that the restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment); Pressley v. Johnson, 268 Fed. App'x 181, 183 (3d Cir.2008) (same); Walker v. Campbell, Civ. No. 09–282, 2010 WL 2891488 (W.D.Pa. May 4, 2010) (same); Fortson v. Kelchner, Civ. No. 08–532, 2009 WL 693247, at *3 (W.D.Pa. Mar.13, 2009) (granting Defendants' Motion to Dismiss as to Plaintiff's Eighth Amendment claim regarding confinement in the RHU and SMU); Milhouse v. Arbasak, Civ. No. 07–01442, 2009 WL 1119488, 3 (E.D.Pa. April 27, 2009) (holding that mere placement in SHU did not violate the Eighth Amendment); Pressley v. Blaine, 544 F.Supp.2d 446, 453 (W.D.Pa.2008) (holding that 1080 days of disciplinary confinement did not implicate the Eighth Amendment); Dantzler v. Beard, Civ. No. 05–1727, 2007 WL 5018184, at *11–12 (W.D.Pa. Dec.6,

2007) (holding that the conditions of confinement in the SMU and LTSU did not amount to cruel and unusual punishment in violation of the Eighth Amendment); Woods v. Abrams, Civ. No. 06–757, 2007 WL 2852525, 14 (W.D.Pa. Sep.27, 2007) (holding that the conditions of confinement in the LTSU did not satisfy the objective component of an Eighth Amendment claim); [ Gary] Banks v. Beard, Civ. No. 03–659, 2006 WL 2192015, at *11 (W.D.Pa. Aug.1, 2006) (same)." Norris v. Davis, No.10-1118, 2011 WL 5553633, *6 (W.D.Pa Nov. 15,2011). Thus, it is clear that prison officials at the SMU could–consistent with the constitution– require Ball to wear a smock, and her claims to the contrary are unavailing.

Furthermore, Ball's complaint fundamentally misconstrues the role of the federal courts in prison disciplinary matters. In bringing constitutional claims against correctional officers arising out of prison disciplinary hearings, Ball faces an exacting burden of proof. It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary

evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306.  In the past, inmates have often invited courts find violations of this due process right based upon general assertions of staff bias. Yet, such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F.App'x. 797, 799 (3d Cir. 2008), courts generally decline to sustain due process challenges to disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F.App'x 488 (3d Cir. 2007).

A prison disciplinary determination comports with due process if it is based on

16

"some evidence." <u>See</u> <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. <u>See</u> <u>id.</u> at 455; <u>Thompson v. Owens</u>, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. <u>Hill</u>, 472 U.S. at 457; <u>Elkin v. Fauver</u>, 969 F.2d 48 (3d Cir.1992); <u>Thompson v. Owens</u>, 889 F.2d 500 (3d Cir. 1989); <u>Franco v. Kelly</u>, 854 F.2d 584, 588 (2d Cir. 1988); <u>Freeman v. Rideout</u>, 808 F.2d 949, 955 (2d Cir. 1986). Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]." <u>Freeman</u>, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

<u>Hill</u>, 472 U.S. at 455-456.

Provided that a prisoner is afforded these due process protections during the disciplinary hearing process, it is well-settled that a claim that a misconduct report was false, standing alone, does not state a valid <u>Bivens</u> cause of action. As the United States Court of Appeals for the Third Circuit has aptly observed: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. <u>See e.g., Freeman v. Rideout</u>, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges); <u>Hanrahan v. Lane</u>, 747 F.2d 1137, 1140 (7th Cir.1984)." <u>Richardson v. Sherrer</u>, 344 F. App'x 755, 757-758 (3d Cir. 2007). <u>See also</u> <u>Booth v. Pence</u>, 141 F. App'x 66 (3d Cir. 2005); <u>Smith v. Mensinger</u>, 293 F.3d 641, 653-54 (3d Cir. 2002).Moreover, in a prison discipline context, an inmate's retaliation claim fails whenever the defendant shows that there is "some evidence" to support the discipline citation. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . <u>See Henderson v. Baird</u>, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." <u>Nifas v. Beard</u>, 374 F.App'x 241, 244 (3d Cir. 2010). Finally, while prison disciplinary procedures should

18

afford an inmate a reasonable opportunity to attend a hearing, the hearing may proceed without the prisoner if the inmate refuses to attend. <u>Pressley v. Blaine</u>, 352 F.App'x 701 (3d Cir. 2009).

Here the pleadings submitted by Ball reveal that all of the procedural requisites for a disciplinary hearing were satisfied. First, it is evident from Ball's submissions, that the disciplinary decision was supported by "some evidence," a finding which largely negates any due process claims in this setting. Thus, with respect to the violent episode which erupted when Ball was displeased with the appearance of a piece of cornbread offered to her, the hearing reports which Ball submits with her complaint reveal that multiple witnesses reported that Ball threatened to throw her food tray at staff, an act which would reasonably support these disciplinary charges. Furthermore, the epithets which Ball directed at staff when she was ordered to return the food tray, ("Don't touch that tray you skinny limped dick  mother fucker"), can reasonably be construed as expressing a refusal to comply with staff orders. Similarly, the discovery of Ball's prison garb stuffed into the toilet of her cell certainly constitutes some evidence of misuse and damage to prison property, and permits a fact finder to conclude that Ball's denial that she inserted her clothes into her cell toilet was false.

Finding that ample evidence existed to support these disciplinary citations we further find that, on the facts  presented by Ball,  prison officials did not err when they

19

proceeded with this hearing *in absentia* after Ball demanded that she be given her choice of wardrobe for this hearing, which involved Ball's destruction and misuse of prison garb previously issued to her. Despite Ball's protestations that she did not refuse to attend the hearing, prison officials could reasonably have concluded that Ball's insistence on setting a series of unacceptable conditions on her attendance at this hearing, dictating the location of the hearing and her attire, was tantamount to a refusal.

Finally, even if Ball had stated a colorable constitutional claim relating to her wardrobe demands at this disciplinary hearing, the defendants are nevertheless entitled to qualified immunity from these claims for damages.   In order to establish a civil rights claim Ball must show the deprivation of a right secured by the United States Constitution or the laws of the United States. Satisfying these elements alone, however, does not guarantee that Ball is entitled to recover damages from these public officials. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, —U.S.—, 129 S. Ct. 808, 815 (2009).  This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity

from suit." <u>Crouse v. S. Lebanon Twp.</u>, 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009)

(Conner, J.) (citations omitted).  Qualified immunity

> balances two important interests – the need to hold public officials
> accountable when they exercise power irresponsibly and the need to
> shield officials from harassment, distraction, and liability when they
> perform their duties reasonably.  The protection of qualified immunity
> applies regardless of whether the government official's error is "a
> mistake of law, a mistake of fact, or a mistake based on mixed questions
> of law and fact."

<u>Pearson</u>, 129 S. Ct. at 815.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries.  First, the court must evaluate whether the defendant violated a constitutional right.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001), abrogated in part by <u>Pearson</u>, 129 S. Ct. 808; <u>Curley v. Klem</u>, 499 F.3d 199, 206 (3d Cir. 2007); <u>Williams v. Bitner</u>, 455 F.3d 186, 190 (3d Cir. 2006).  If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor.  <u>Saucier</u>, 533 U.S. at 201.  If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted.  <u>Pearson</u>, 129 S. Ct. at 815-16; <u>Saucier</u>, 533 U.S. at 201-02.  The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances

would understand that his conduct violates that right.  <u>Williams</u>, 455 F.3d at 191

(citing <u>Saucier</u>, 533 U.S. at 202).

    In order to find that a right is clearly established, "the right allegedly violated

must be defined at the appropriate level of specificity." <u>Wilson</u>, 526 U.S. at 615.  The

Supreme Court has explained that, at least in some cases, "a general constitutional rule

already identified in the decisional law may apply with obvious clarity to the specific

conduct in question, even though the very action in question has [not] previously been

held unlawful." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002) (quoting <u>United States v.</u>

<u>Lanier</u>, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In

some cases, "officials can still be on notice that their conduct violates established law

even in novel factual circumstances." <u>Wilson</u>, 455 F.3d at 191 (quoting <u>Hope</u>, 536

U.S. at 741).

    The court is no longer required to conduct these two inquiries sequentially,

<u>Pearson</u>, 129 S. Ct. at 820, and it may forego difficult constitutional issues and award

qualified immunity to a defendant if it is apparent that the defendant did not violate

rights that were clearly established at the time the defendant acted. <u>Id.</u> Where a court

elects to address the alleged constitutional violations, however, the court's analysis of

the merits for purposes of summary judgment merges with analysis of the deprivation

of federal rights for purposes of qualified immunity.  <u>Gruenke v. Seip</u>, 225 F.3d 290,

299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of

Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the]

assertion of qualified immunity is a careful examination of the record . . . to establish

. . . a detailed factual description of the actions of each individual defendant (viewed

in a light most favorable to the plaintiff).") Because qualified immunity entails a

consideration of whether the law was clearly established at the time of a defendant's

conduct, this defense, which focuses on the state of the law, presents a question of law

for the court, and one which can often be resolved on summary judgment. See

Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

    In this case, prison officials were confronted by a difficult, obstreperous inmate,

who was demanding new clothes after being cited with destroying her prior clothes,

and was making the receipt of new prison garb a condition of her attendance at a

disciplinary hearing intended to address her prior misuse of prison-issued wear. On

these facts, prison officials could not reasonably have anticipated that refusing to

accede to the clothing demands of this inmate who destroys her prison clothing would

violate some clearly established constitutional due process right.  In short, given the

state of the law in this field, in this setting the defendants simply could not have

recognized that their actions in declining to permit Ball to dictate the matters relating

to prison attire would violate "clearly established statutory or constitutional right[] of

which a reasonable person would have known." <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999). Therefore the defendants are entitled to qualified immunity on this claim.[4]

In sum, in its current form Ball's complaint presents legally bankrupt claims that are wholly divorced from the factual context confronting prison officials in October 2011. Further, in its present form, the complaint makes a series of meritless allegations, and we find that the defendants are entitled to qualified immunity on all of Ball's claims.

While this screening merits analysis calls for dismissal of this action in its current form, we recommend that Ball be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint. We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, <u>see</u> <u>Fletcher-Hardee Corp. v. Pote  Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is

---

[4]In appropriate cases this court is entitled to address this qualified immunity defense *sua sponte*, when appropriate. <u>See</u> <u>Doe v. Delie</u>, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).

recommended that the Court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court.

## III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's motion for leave to proceed *in forma pauperis* be GRANTED (Doc. 2), but that the Plaintiff's complaint be dismissed without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the defendant acts within 20 days of any dismissal order.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own

determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 8th day of December, 2011.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge