**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAWN BALL, | : | CIVIL NO. 1:11-CV-2240 |
| | : | |
| Plaintiff, | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| | : | |
| SGT. CAMPBELL, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM ORDER**

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

The plaintiff, Dawn Ball, is an inmate housed in the Restricted Housing Unit

at the State Correctional Institution (SCI) Muncy, who by her own account suffers

from a cascading array of severe mental illnesses, and candidly acknowledges that she

is profoundly disturbed, informing the Court that:

> My mental health is declining. I suffer from OCD so bad I scrub my
> hands till they bleed, confusion, PTSD, disassociative disorder, I smell,
> see and hear things not there, severely stressed, phobias, agoraphobia,
> severe anxiety, lack of interest in things, lack of arousal in thing, racing
> thoughts, suicidal, cognitive problems and disorders, lack of interest in
> life, disoriented, dizzyness, paranoid–schizophrenic, constant worry,
> frightened scared, can't properly care for myself, tics, bipolar, manic
> depressive, mood swings that are so severe, can't think clearly....

1

Ball v. Beard, No. 1:09-CV-845, (Doc. 42,  pp. 6-7).

Furthermore, Ball is also an inmate who has reported to the Court that she engages in multiple episodes of destructive, self-defeating and senseless behavior. For example, recurring themes in Ball's lawsuits include Ball's penchant for smearing feces on herself and her cell, her destruction of her own clothing, and her use of her clothing to plug her toilet and flood her cell with water and human waste.  Ball is also, by her own admission, an inmate with a propensity of sudden, explosive  rages, as illustrated by the civil complaint which she has filed Ball v. Barr, No.1:11-CV-2240 (M.D.Pa.).  In this complaint, Ball describes an episode in which a discussion regarding the aesthetic qualities of a piece of cornbread escalated in a matter of moments into a profanity-laced wrestling match over a food tray.

While she suffers from paranoia, schizophrenia, and experiences these visual and auditory hallucinations, Ball is also a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison.  Indeed, at present Ball has more than twenty lawsuits pending before this Court.[1]

---

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.);Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-

It is against this backdrop that Ball chose to pursue the instant case. The narrative thread Ball's initial complaint, which was filed on December 2, 2011, began with an extraordinary admission. In this complaint Ball confessed to attempting to cover-up institutional misconduct by another prisoner. (Doc. 1)

In prison, inmates occasionally use fishing line to surreptitiously pass contraband between cells. Because of the security threats which this behavior presents, this practice is forbidden, inmates are prohibited from possessing fishing line, and fishing line is defined as illegal contraband in an institutional setting. Rudacille v. Hoke, No. 08-1718, 2009 WL 464480 (M.D. Pa. Feb. 24, 2009).

On September 7, 2011, Ball attempted to cover-up and conceal the possession and use of such contraband by a fellow inmate. As Ball recited in her complaint: "On 9-7-11 I told inmate Crystal Chaplin to pull her fishing line in because Sgt. Campbell walked on the pod." (Doc. 1, ¶IV. 1)  Not surprisingly, given the wholly illicit nature of this behavior, Ball reports in her complaint that Sergeant Campbell

---

CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v Curham, No. 1:12-CV-12 (M.D.Pa.).

"got very angry because I told her [follow inmate] to pull her fishing line in." (Id.)

While Ball's complaint contained this clear admission to a significant institutional infraction on her part, the balance of her pleading, which made claims of wrongdoing against correctional staff, was somewhat more murky. According to Ball, at some later date, Sergeant Campbell reported to Lieutenant Hummel that Ball was refusing to return her lunch tray to staff. (Id., ¶IV. 2.) Although Ball denied that she resisted staff efforts to retrieve her lunch trays in the Fall of 2011, Ball has filed a companion case with this court, Ball v. Barr, No. 11-CV-2240 (M.D.Pa.), in which she attached documents which actually confirmed this assertion, acknowledging that when a correctional officer ordered Ball to return a lunch tray after a dispute over a piece of cornbread, it was alleged that she refused stating "Don't touch that tray you skinny limped dick  mother fucker." Ball v. Barr, No. 11-CV-2240 (M.D.Pa.)(Doc. 1)

According to Ball's complaint, when Lieutenant Hummel learned of this fracas regarding Ball's refusal to return meal trays, he directed that she receive bagged meals instead of food trays. Ball's complaint alleged that her receipt of bagged meals in lieu of food trays led to yet another controversy. Prison staff reported that Ball, who had previously refused to return lunch trays, was now refusing to return her meal bags to staff after consuming these bagged meals, a charge that Ball denied.(Id.)

4

Presented with these allegations of renewed mealtime misconduct by Ball, prison officials directed that Ball receive meals consisting of food loaf for three days, for a total of nine food loaf meals. (Id.)  "A Food Loaf is a 29-30 ounce loaf (raw weight) made of various food ingredients as specified by the Department's standardized recipe ..., that when blended together and baked, contains all the necessary caloric and nutritional requirements." Brown v. Sobina, No. 08-128, 2009 WL 5173717, *6 (W.D.Pa. Dec. 29, 2009).

Ball plainly does not like food loaf, complaining that "its so dry . . . it got stuck in my throat and I could not breath and I almost died. It is dangerous." (Id.)  Ball alleged that on one of these nine occasions she received a "food loaf with fish in it," which she declined to eat because of a food allergy.  While Ball leveled these dietary complaints regarding the packaging and content of her meals, notably lacking from her pleadings was any assertion that she was denied sustenance.  Instead, her complaint was simply that she was given bagged meals, and then food loaf for three days. (Id.)

In addition to these dietary claims, Ball's complaint also alleged that Sergeant Campbell discarded some toothpaste, shampoo, deodorants, pens, toothbrushes, and other property which she possessed.  However, Ball indicated that when she complained about this action she received a post-deprivation remedy in that

Lieutenant Hummel ordered a number of these items replaced.  While acknowledging that the discarded items were replaced by the prison, Ball's complaint seemed to persist in arguing that a dispute regarding discrepancies between the number of deodorants and tubes of toothpaste discarded and returned presented issues of a constitutional dimension.

On the basis of these otherwise unadorned allegations Ball sued four correctional officials–Lieutenants Beckley and Hummel, Sergeant Campbell, and C.O. Baldwin– and demanded both $20,000 in compensatory damages and punitive damages of $20,000 from each defendant.

Along with this complaint, Ball filed a motion for leave to proceed *in forma pauperis*. (Doc. 2)  On December 9, 2011, we issued a report and recommendation which recommended that this motion for leave to proceed *in forma pauperis* be granted, but as part of the Court's legally-mandated screening process we recommended that the complaint be dismissed for failure to state a claim upon which relief can be granted. (Doc. 7)  Specifically, we recommended that the plaintiff's complaint be dismissed without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the defendant acts within 20 days of any dismissal order. (Id.)

On January 23, 2012, the District Court adopted this report and recommendation and entered the following order:

> [T]he Report and Recommendation (Doc. No. 7) is **ADOPTED** and Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE** to Plaintiff endeavoring to cure the defects outlined in the Report and Recommendation within twenty days of the date of this order. *Failure to timely amend the complaint will result in the complaint being dismissed with prejudice.*

(Doc. 18)(emphasis added.)

Despite this clear and precise warning from the District Court, Ball has not filed an amended complaint in this action.  Nor did she file a timely motion for extension of time in which to amend this particular complaint, and the time for filing an amended complaint has now lapsed without appropriate and timely action on Ball's part.

Instead, on February 28, 2012, Ball filed a document which purported to describe a request for reconsideration which she claimed to have submitted on January 29, 2012. (Doc. 27) This claim is an example of a recurring theme in this case, Ball's repeated allegations that she has filed things that do not exist and have not been received.  Notwithstanding the fact that there is nothing to support the belated claims of the existence of earlier filings made by Ball in this pleading, out of an abundance of caution and in order to protect the plaintiff's's rights, we will treat

this motion as a motion for extension of time, and direct Ball to make any further filing that she wishes to have us consider on or before **March 15, 2012**.  Failure to comply with this order may result in the dismissal of this action with prejudice.

So ordered this 6th day of March, 2012.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge