**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

IN RE:    **Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.)**
**Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.)**
**Ball v. Hill, No.1:09-CV-773 (M.D.Pa.)**
**Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.)**
**Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.)**
**Ball v. Oden , No 1:09-CV-847 (M.D.Pa.)**
**Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.)**
**Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.)**
**Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.)   (Chief Judge Kane)**
**Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.)**
**Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.)**
**Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.)        (M. J. Carlson)**
**Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.)**
**Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.)**
**Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.)**
**Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.)**
**Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.)**
**Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.)**
**Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.)**
**Ball v Curham, No. 1:12-CV-10 (M.D.Pa.)**
**Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.)**
**Ball v Giroux, No. 1:12-CV-12 (M.D.Pa.)**
**Ball v. Sipe, 1:12-CV-537 (M.D.Pa.)**
**Ball v Giroux, No. 1:12-CV-812 (M.D.Pa.)**
**Ball v Giroux, No. 1:12-CV-813 (M.D.Pa.)**
**Ball v Hummel, No. 1:12-CV-814 (M.D.Pa.)**
**Ball v D'Addio, No. 1:12-CV-815 (M.D.Pa.)**

**MEMORANDUM  OPINION**

Dawn Ball's current circumstances continue to inspire deep concern.  Ball is an

inmate housed in the Restricted Housing Unit at the State Correctional Institution

(SCI) Muncy, who by her own account suffers from a cascading array of severe mental

illnesses.  Ball v. Beard, No. 1:09-CV-845 (Doc. 42,  pp. 6-7).

Furthermore, Ball is also an inmate who has reported to the Court on numerous occasions that she engages in multiple episodes of destructive, self-defeating and senseless behavior. For example, recurring themes in Ball's lawsuits include Ball's penchant for smearing feces on herself and her cell, her destruction of her own clothing, and her use of her clothing to plug her toilet and flood her cell with water and human waste. Ball is also, by her own admission, an inmate with a propensity for sudden, explosive rages, as illustrated by the civil complaint which she has filed <u>Ball v. Barr</u>, No.1:11-CV-2240 (M.D.Pa.). In this complaint, Ball describes an episode in which a discussion regarding the aesthetic qualities of a piece of cornbread escalated in a matter of moments into a profanity-laced wrestling match over a food tray.

While she suffers from paranoia, schizophrenia, and experiences these visual and auditory hallucinations, Ball is also a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison. Indeed, at present Ball has approximately twenty-five lawsuits lodged before this Court.[1] Ball is also a prodigiously unsuccessful litigant, who has had many

---

[1]See, e.g., <u>Ball v. SCI Muncy</u>, No.1:08-CV-700 (M.D.Pa.); <u>Ball v. SCI-Muncy</u>, No. 1:08-CV-701 (M.D.Pa.); <u>Ball v. Hill</u>, No.1:09-CV-773 (M.D.Pa.); <u>Ball v. Beard</u>, No. 1:09-CV-845 (M.D.Pa.); <u>Ball v. Lamas</u>, No. 1:09-CV-846, (M.D. Pa.); <u>Ball v. Oden</u>, No 1:09-CV-847 (M.D.Pa.); <u>Ball v. Bower</u>, No. 1:10-CV-2561 (M.D.Pa.); <u>Ball v. Sisley</u>, No. 1:11-CV-877 (M.D.Pa.); <u>Ball v. Struther</u>, No. 1:11-CV-1265 (M.D.Pa.); <u>Ball v. Hummel</u>, No. 1:11-CV-1422 (M.D.Pa.); <u>Ball v. Beckley</u>, No. 1:11-CV-1829 (M.D.Pa.); <u>Ball v. Sipe</u>, No. 1:11-CV-1830 (M.D.Pa.); <u>Ball v. Craver</u>, No. 1:11-CV-1831 (M.D.Pa.); <u>Ball v. Powley</u>, No. 1:11-

prior lawsuits and appeals dismissed either for failure to exhaust her administrative remedies, or as frivolous on the grounds that the lawsuit or appeal failed to state a claim upon which relief could be granted.

Having launched this body of litigation, Ball now seeks to instruct the Court regarding when, where, and how all of these cases should be permitted to proceed. This case now comes before the Court on multiple motions filed by Ball which seek an open-ended stay of all of her litigation, in part, because Ball complains that prison officials will not allow her to keep as many as sixteen boxes of litigation files in her cell at the Restricted Housing Unit as the State Correctional Institution Muncy, a circumstance which she says impairs her ability to litigate these claims.

At the outset, we begin by observing that state inmates in Pennsylvania like Ball have in the past often invited federal courts to entertain motions that would direct their jailers to allow them to store great bodies of legal materials in their cells, or gain greater access to legal materials.  Yet, these requests, while frequently made, have rarely been embraced by the courts. See, e.g., Kershner v. Mazurkiewicz, 670 F.2d

---

CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v Curham, No. 1:12-CV-12 (M.D.Pa.); Ball v. Sipe, 1:12-CV-537 (M.D.Pa.);Ball v. Giroux, No. 1:12-CV-812 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-813 (M.D.Pa.); Ball v. Hummel, No. 1:12-CV-814 (M.D.Pa.); Ball v. D'Addio, No. 1:12-CV-815 (M.D.Pa.) .

440, 443 (3d Cir. 1982)(affirming denial of prisoner motion for preliminary injunction

seeking greater access to legal materials); Edmonds v. Sobina, 296 F. App'x 214, 216

n. 3 (3d Cir. 2008); Barnes v. Quattlebaum, No. 08-2197, 2009 WL 678165 (D.S.C.

March 12, 2009); Clay v. Sobina, No. 06-861, 2007 WL 950384 (W.D.Pa. March 26,

2007); Wesley v. Vaughn, No. 99-1228, 2001 WL 1391254 (E.D.Pa. Nov. 7, 2001).

Instead, these courts have repeatedly upheld as reasonable prison policies concerning

access to, and the storage of, legal materials that are even more restrictive than those

at issue here,[2] finding that these policies do not unduly infringe upon inmates' rights

to petition the courts.  Id.   Moreover, the Department of Corrections has recently

explained that it provides Ball with extraordinary access to legal materials, typically

allowing her to retain as many as eight boxes of material in her cell, but recently had

to curtail this access temporarily after Ball indulged in misconduct, began voicing an

intention to harm herself, kill staff, and defaced her cell with graffiti, including graffiti

composed using her own feces.

Ball's request for a global stay of this litigation is the second such request made

by Ball within the past month.  Previously on May 15, 2012, we denied an identical

request made by Ball, noting that there was something profoundly inconsistent in these

---

[2] For example, in Barnes v. Quattlebaum, No. 08-2197, 2009 WL 678165 (D.S.C. March 12, 2009), and Wesley v. Vaughn, No. 99-1228, 2001 WL 1391254 (E.D.Pa. Nov. 7, 2001), the courts upheld policies limiting an inmate to storage of one box of legal materials in his cell per month.

pleadings, since Ball's motions began with factual averments which detailed a series

of allegedly improper actions by prison officials, allegations which if true required

immediate attention by the courts.  Yet, while Ball recited facts which cried out for

action by the courts, she sought relief which would not be in her interests, or in the

interests of justice, a complete cessation of this litigation.

Because we believed that we owed it to Ball, and to all of the many defendants

she has sued, to promptly address the merits of her claims, on May 15, 2012, we

denied Ball's first motions to generally stay all of Ball's litigation to some future date

of her choosing.  Instead, we instructed Ball in clear and precise terms as follows:

> In the meanwhile Ball is directed to continue to comply with the filing
> deadlines previously set by this Court and  IT IS ORDERED that any
> future requests for continuance or stay must be made individually by Ball
> in each of her cases along with factual averments specific to each
> particular case explaining why a stay or continuance is necessary.

Presented with this clear instruction from the Court, Ball has chosen to ignore

this guidance and file another global stay request in all of her cases.  Indeed, Ball has

endeavored not only to ignore the Court's prior order, but to try to ignore the Court

altogether by instructing the clerk's office to present these latest stay motions to

another judge.  Furthermore, Ball's motion now seek more than a stay of future

litigation, she also demands that all orders in all of her cases entered since April 2012,

be "revoked."  Ball has also cloaked her stay motions in threats, stating that if her

instructions are not all followed by the Courts she will appeal each and every case.

This is, of course, a perilous legal path for Ball to follow since frivolous appeals may

count as strikes against Ball under the gate-keeping provisions of 28 U.S.C. §1915(g),

and may in the future severely limit her ability to file lawsuits at no immediate, direct

cost to herself.

We will deny these requests. It is well-settled that rulings on requests for

extension of time or stays rest in the sound discretion of the court. Miller v. Ashcroft,

76 F. App'x 457, 461 (3d Cir. 2003). That discretion is guided, however, by certain

basic principles. Thus, under this abuse of discretion standard, a trial court's control

of its docket will not be disturbed "'except upon the clearest showing that the

procedures have resulted in actual and substantial prejudice to the complaining

litigant'" Id. (citations omitted). Moreover, any party challenging a ruling denying a

continuance or stay request, "ha[s] a heavy burden to bear, . . ., as matters of docket

control and conduct of [litigation] are committed to the sound discretion of the district

court." In re Fine Paper Antitrust Litigation 685 F.2d 810, 817 (3d Cir.

1982)(citations omitted). Furthermore, when exercising this discretion, we

acknowledge a basic truth: we must remain mindful of the fact that "the Federal Rules

are meant to be applied in such a way as to promote justice. See Fed.R.Civ.P. 1.

Often that will mean that courts should strive to resolve cases on their merits whenever

possible. However, justice also requires that the merits of a particular dispute be

placed before the court in a timely fashion . . . ." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d Cir. 1998)(affirming denial of request for extension of time).

Here, the application of these basic principles compels us to deny Ball's requests, along with Ball's request that were retroactively revoke prior orders, as well as Ball's efforts to dictate which judges will hear and decide her motions.  In denying these motions we observe, once again, for Ball that we are duty-bound to pursue her allegations and claims to ensure that she receives justice.  Staying these cases in the face of what Ball has claimed would be a fundamental dereliction of our duty to Ball, to the truth, and to justice.

We also note that, if Ball's allegations are not fully supported, then it would be a grave injustice to the dozens of defendants sued by Ball to allow these allegations and claims to remain pending indefinitely, when they can, should and must be resolved.  In short, if Ball's allegations are not accurate, then these motions to stay would perpetuate an injustice and present a situation where delays sought by one party unfairly prejudice the rights and interests of the opposing parties.  In such instances, the proper exercise of discretion calls for the denial of any motion for a stay of proceedings.

Further, Ball must consider that her stay motions are plainly over broad.  In their current form these motions would prevent the Court from acting upon matters which

are entirely ripe, and ready for resolution.  These motions would also prevent the Court from acting in cases where Ball has failed to comply with pleadings deadlines, and is now subject to sanctions, including dismissal of her claims.  In short, adopting a global, all-encompassing, open-ended stay of all of these proceedings would provide the Plaintiff with a license to avoid the consequences of her own litigation choices, and defaults.  Such a course would be particularly inappropriate given Ball's litigation history since Ball has already been placed on notice that she may soon forfeit her right to proceed *in forma pauperis* under 28 U.S.C. §1915(g), due to her past penchant for filing frivolous and meritless claims.

Because we believe that we owe it to Ball, and to all of the many defendants she has sued, to promptly address the merits of her claims, we will DENY these motions to generally stay all of Ball's litigation to some future date of her choosing.  Ball is directed to continue to comply with the filing deadlines previously set by this Court and IT IS ORDERED that any requests for continuance or stay must be made individually by Ball in each of her cases along with factual averments specific to each particular case identifying the deadline she wishes to extend or stay, and explaining why a stay or continuance is necessary.

So ordered this 20th day of June 2012.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge